UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JOAQUIN LINARES and JOSE REYES,
on behalf of themselves, individually,                                    **COMPLAINT**
and on behalf of all others similarly-situated,

                                                                          **Docket No.: 20-cv-1408**

                                            Plaintiffs,

            -against-                                                     **Jury Trial Demanded**


MIRSO LEKIC, individually, and
45 TUDOR RESTAURANT LLC d/b/a
TUDOR CITY STEAKHOUSE,


                                            Defendants.
--------------------------------------------------------X

JOAQUIN LINARES and JOSE REYES (together, where appropriate, as "Plaintiffs"), on behalf of themselves, individually, and on behalf of all others similarly-situated ("FLSA Plaintiffs," as that term is defined below), by and through their attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for their Complaint against MIRSO LEKIC, individually ("Lekic"), and 45 TUDOR RESTAURANT LLC d/b/a TUDOR CITY STEAKHOUSE ("Tudor"), (together, where appropriate, as "Defendants"), allege upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1.      This is a civil action for damages and equitable relief based upon violations that Defendants committed of Plaintiffs' rights guaranteed to them by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160; N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 146-1.4; (iii) the NYLL's and the NYCRR's requirement that hospitality employees receive one hour's pay at the minimum wage rate for any day in which their spread of hours exceeds ten,

NYLL § 652(1); NYCRR tit. 12, § 146-1.6; (iv) the NYLL's requirement that employers pay timely wages to their employees in accordance with the agreed terms of employment, NYLL § 191(1)(d); (v) the NYLL's requirement that employers pay employees whose employment has terminated all wages owed no later than the regular payday for the period during which the termination occurred, NYLL § 191(3); (vi) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); (vii) the NYLL's requirement that employers furnish employees with a wage notice at hire containing specific categories of accurate information, NYLL § 195(1); and (viii) any other claim(s) that can be inferred from the facts set forth herein.

2.      Plaintiffs both worked for Defendants - - an individual who owns and operates several restaurants in Manhattan and one of those restaurants that he owns and operates as a limited liability company - - as cooks.  Specifically, in or around November 2015, Lekic hired Linares to work at one of his restaurants, where Linares worked until November 2017, when Lekic transferred Linares to work at Defendant Tudor, where he worked until May 3, 2019.  Likewise, in August 2015, Lekic hired Reyes to work at one of his restaurants, where he worked until January 16, 2018, when Reyes resigned, and then in or around April 2018, Lekic re-hired Reyes to work at Tudor, where Reyes worked until in or around June 2018, when Lekic then scheduled Reyes to work at both Tudor and another one of his restaurants, which Reyes did until on or around April 21, 2019, when Reyes resigned again.

3.      As described below, throughout the entirety of Plaintiffs' respective employment, Defendants failed to pay Plaintiffs the overtime wages lawfully due to them under the FLSA, the NYLL, and the NYCRR.  Specifically, throughout their employment, Defendants required Plaintiffs to work, and Plaintiffs did in fact work, in excess of forty hours each week or virtually

each week, yet Defendants failed to compensate Plaintiffs at the rate of one and one-half times their respective regular rates of pay for all hours that Plaintiffs worked in excess of forty in a week. Instead, Defendants paid Plaintiff Linares a flat weekly salary that operated to cover only the first forty hours that he worked in a week, and thus Defendants failed to compensate Linares at any rate of pay, let alone at the statutorily-required overtime rate of one and one-half times his regular rate for any hours that Linares worked in excess of forty in a week.  For his part, Defendants paid Plaintiff Reyes at his straight-time rate of pay for all hours that he worked in a week, including those in excess of forty, and thus Defendants failed to compensate Reyes at the statutorily-required overtime rate of one and one-half times his regular rate for any hours that Reyes worked in excess of forty in a week.

4.      Defendants also failed to pay Plaintiffs spread-of-hours compensation of one hour's pay at the minimum wage rate for those days when their spread of hours exceeded ten during a given day from beginning to end, as the NYLL and the NYCRR require.

5.      Further, Defendants failed to pay Plaintiffs all of their earned wages in a timely manner, in violation of the NYLL.  Specifically, despite agreeing to pay Plaintiffs on a weekly basis, approximately two-to-three times per month, Defendants delayed payment of Plaintiffs' paycheck to the following week, or longer, and also failed to pay Plaintiffs their last paychecks after Plaintiffs' employment with Defendants ended at any time.

6.      Lastly, Defendants failed to provide Plaintiffs with accurate wage statements on each payday or with any wage notice at their times of hire or re-hire, let alone an accurate one, both as the NYLL requires.

7.      Defendants pay and treat all of their non-managerial kitchen employees in the same manner.

8.      Accordingly, Plaintiffs bring this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of Defendants' violations of the FLSA. Plaintiffs bring their claims under the NYLL on behalf of themselves, individually, and on behalf of any FLSA Plaintiff, as that term is defined below, who opts-in to this action.

## JURISDICTION AND VENUE

9.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*.  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

10.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

11.      At all relevant times herein, Plaintiffs worked for Defendants in New York and were "employees" entitled to protection as defined by the FLSA, the NYLL, and the NYCRR.

12.      At all relevant times herein, Defendant Lekic was and is a restaurateur who owns and operates several restaurants in Manhattan, including Tudor, who in that role controlled the terms and conditions of employment for all of his restaurants' employees in that he hired and fired all employees, determined the rate and method of wage payments to all employees, and was responsible for maintaining employment records.  To that end, Lekic hired and re-hired Plaintiffs, and set their pay and schedule.

13.     At all relevant times herein, Defendant Tudor was and is a limited liability company organized and existing under the laws of New York, with its principal place of business located at 45 Tudor Place, New York, New York 10017.  Defendant Tudor is registered with the New York State Department of State to receive process at that same address.

14.     At all relevant times herein, Defendants were "employers" within the meaning of the FLSA and the NYLL.  Additionally, at all times relevant to the FLSA, Defendant Tudor's qualifying annual business exceeded and exceeds $500,000, and Defendant Tudor was and is engaged in interstate commerce within the meaning of the FLSA, as it employs two or more employees and operates a business that purchases and sells numerous products, such as food and alcohol, that originate in states other than New York, accepts payments in cash that naturally moves across state lines, and accepts credit cards as a form of payment based on cardholder agreements with out-of-state companies, the combination of which subjects Defendant Tudor to the FLSA's overtime requirements as an enterprise.

## COLLECTIVE ACTION ALLEGATIONS

15.     Plaintiffs seek to bring this suit to recover from Defendants their unpaid overtime compensation and liquidated damages under the applicable provisions of the FLSA, 29 U.S.C. § 216(b), individually, on their own behalf, as well as on behalf of those in the following collective:

> Current and former employees of Defendants who, during the applicable FLSA limitations period, performed any work for Defendants as non-managerial kitchen employees and who give consent to file a claim to recover damages for overtime compensation and liquidated damages that is legally due to them ("FLSA Plaintiffs").

16.     Defendants treated Plaintiff and all FLSA Plaintiffs similarly in that Plaintiffs and all FLSA Plaintiffs: (1) performed and perform similar tasks, as described in the "Background Facts" section below; (2) were and are subject to the same laws and regulations; (3) were and are paid in the same or similar manner; (4) were and are required to work in excess of forty hours in a workweek; and (5) were and are not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty.

17.     At all relevant times, Defendants were aware of the requirement to pay Plaintiffs and all FLSA Plaintiffs at an amount equal to one and one-half times their respective regular rates of pay for all hours worked each workweek above forty, yet Defendants purposefully chose not to do so.  Thus, Plaintiffs and all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation, in violation of the FLSA.

## BACKGROUND FACTS

18.     Defendant Lekic was and is a Manhattan restauranteur who has owned and operated and who owns and operates several restaurants in Manhattan - - including Defendant Tudor, as well as the now-closed Four Cuts Steakhouse ("Four Cuts") and other restaurants - - who in that role oversees and manages the restaurants' operations on a day-to-day basis, including with respect to all of its employees.

19.     Defendant Tudor is a steakhouse located in Manhattan that does business under the name Tudor City Steakhouse.

20.     Four Cuts was a steakhouse located 1076 1st Avenue, New York, New York 10022. It closed on or around April 20, 2019.

6

21.     In or around November 2015, Defendant Lekic hired Linares to work as a cook at Four Cuts, and he worked in that role until September 14, 2017, when Lekic transferred Linares to work as a cook at Tudor, a position that Linares held until April 23, 2019.

22.     In or around August 2015, Lekic hired Reyes to work as a cook at Four Cuts, and he worked in that role until January 16, 2018 when Reyes resigned.  Then in or around February 2018, Lekic rehired Reyes to work as a cook at Tudor, and he worked in that role until in or around June 2018, when Lekic scheduled Reyes to work as a cook at both Tudor and Four Cuts, and he worked in that role until on or around April 21, 2019, when Reyes resigned for a second time.

23.     As a cook, as the name suggests, Plaintiffs worked in the kitchen with other back of the house employees and their main duties consisted of cooking and preparing food for Defendants' customers.

24.     Throughout his employment, Defendants required Linares to work, and Linares did work, six days per week, and occasionally a seventh day per week, without being permitted to take a scheduled or uninterrupted break during his shifts.  More specifically, from November 2015 until September 13, 2017, Lekic required Linares to work at Four Cuts, Monday through Friday from 11:00 a.m. to 11:00 p.m., and Saturday from 3:00 p.m. to 11:00 p.m.  Then, after Lekic transferred Linares to Tudor, from September 14, 2017 until on or about December 31, 2017, Linares worked Monday through Friday from 2:00 p.m. until 11:00 p.m., and Saturday from 3:00 p.m. until 11:00 p.m.  Thereafter, beginning on or around January 1, 2018 and continuing until the end of Linares's employment on April 23, 2019, Linares worked Monday through Friday from 11:00 a.m. until 11:00 p.m., and Saturday from 3:00 p.m. until 11:00 p.m.  Throughout his employment, in addition to the work he performed on Mondays through Saturdays, approximately once per month Linares would also work on Sunday from 3:00 p.m. until 11:00 p.m.  Thus, Linares typically worked either

fifty-three or sixty-eight hours per week, and at least once per month sixty-one or seventy-six hours per week when he worked on Sundays.

25.     In exchange for his work, Defendant Lekic paid Linares a flat weekly salary of $900.00 from November 2015 until September 13,2017, and then from September 14, 2017 until the end of his employment, Defendants paid Linares a flat weekly salary of $1,000.00, which operated to cover his first forty hours of work per week, and which amounts to an hourly rate of $22.50 and $25.00, respectively.  Thus, throughout his employment, Defendants failed to pay Linares at any rate of pay, let alone at his overtime rate of either $33.75 or $37.50, for any hours that Linares worked in a week in excess of forty.

26.     By way of example only, during the week of November 12 through 18, 2017, Defendants required Linares to work, and Linares did in fact work, the following schedule:

> Sunday, November 12, 2017: off;
>
> Monday, November 13, 2017: 2:00 p.m. until 11:00 p.m.;
>
> Tuesday, November 14, 2017: 2:00 p.m. until 11:00 p.m.;
>
> Wednesday, November 15, 2017: 2:00 p.m. until 11:00 p.m.;
>
> Thursday, November 16, 2017: 2:00 p.m. until 11:00 p.m.;
>
> Friday, November 17, 2017: 2:00 p.m. until 11:00 p.m.;
>
> Saturday, November 18, 2017: 3:00 p.m. until 11:00 p.m.

Accordingly, Linares worked a total of fifty-three hours during this week.  In exchange for his work this week, Defendants paid Linares a salary of $1,000.00 for his first forty hours of work only, which amounts to an hourly rate of $25.00.  Defendants did not pay Linares for the thirteen hours that he worked in excess of forty during this week at any rate of pay, much less at his overtime rate of $37.50 per hour.

27.    By way of a second example, during the week of April 14 through 20, 2019, Defendants required Linares to work, and Linares did in fact work, the following schedule:

Sunday, April 14, 2019: off;

Monday, April 15, 2019: 11:00 a.m. until 11:00 p.m.;

Tuesday, April 16, 2019: 11:00 a.m. until 11:00 p.m.;

Wednesday, April 17, 2019: 11:00 a.m. until 11:00 p.m.;

Thursday, April 18, 2019: 11:00 a.m. until 11:00 p.m.;

Friday, April 19, 2019: 11:00 a.m. until 11:00 p.m.;

Saturday, April 20, 2019: 3:00 p.m. until 11:00 p.m.

Accordingly, Linares worked a total of sixty-eight hours during this week.  In exchange for his work this week, Defendants paid Linares a salary of $1,000.00 for his first forty hours of work only, which amounts to an hourly rate of $25.00.  Defendants did not pay Linares for the twenty-eight hours that he worked in excess of forty during this week at any rate of pay, much less at his overtime rate of $37.50 per hour.

28.    Additionally, on every workday that Linares worked for Defendants from Monday through Friday with the exception of mid-September 2017 through December 2017, his spread of hours from the beginning to the end of each shift exceeded ten.  However, for those days, such as during the week described in the prior paragraph, Defendants failed to compensate Linares with an additional hour's pay at the statutorily-required minimum wage rate.

29.    For his part, throughout his employment, Defendants required Reyes to work, and Reyes did work, six days per week, without being permitted to take a scheduled or uninterrupted break during his shifts.  More specifically, from in or around August 2015 until January 16, 2018, Lekic required Linares to work at Four Cuts on Tuesday, Wednesday, and Sunday from 3:15 p.m.

to 10:30 p.m., and on Thursdays through Saturdays from 3:15 p.m. to 11:00 p.m. Then, from when Defendants rehired Reyes to work at Tudor in or around February 2018 until on or around May 31, 2018, Reyes worked Tuesday through Sunday from 11:00 a.m. to 11:00 p.m. Thereafter, beginning on or about June 1, 2018 and continuing until the end of his employment, Reyes worked Tuesday through Friday from 11:00 a.m. to 3:00 p.m. at Tudor, and Tuesday, Wednesday, and Sunday from 3:15 p.m. until 10:30 p.m., and Thursday through Saturday from 3:15 p.m. to 11:00 p.m., at Four Cuts. Thus, Reyes typically worked forty-five, sixty-one, or seventy-two hours per week.

30.    In exchange for his work, throughout his employment, Defendants paid Reyes $16.50 per hour for all hours that he worked in a week, including those hours that he worked in excess of forty.

31.    By way of example only, during the week of December 10 16, 2017, Defendants required Reyes to work, and Reyes did in fact work, the following schedule:

> Sunday, December 10, 2017: 3:15 p.m. until 10:30 p.m.
>
> Monday, December 11, 2017: Off
>
> Tuesday, December 12, 2017: 3:15 p.m. until 10:30 p.m.
>
> Wednesday, December 13, 2017: 3:15 p.m. until 10:30 p.m.
>
> Thursday, December 14, 2017: 3:15 p.m. until 11:00 p.m.
>
> Friday, December 15, 2017: 3:15 p.m. until 11:00 p.m.
>
> Saturday, December 16, 2017: 3:15 until 11:00 p.m.

Accordingly, Reyes worked a total of forty-five hours during this week. In exchange for his work during this week, Defendants paid Reyes $16.50 per hour for all hours worked, including the five hours that he worked in excess of forty.

32.     By way of a second example, during the week of May 13 through 19, 2018, Defendants required Reyes to work, and Reyes did in fact work, the following schedule:

Sunday, May 13, 2018: 11:00 a.m. until 11:00 p.m.

Monday, May 14, 2018: Off

Tuesday, May 15, 2018: 11:00 a.m. until 11:00 p.m.;

Wednesday, May 16, 2018: 11:00 a.m. until 11:00 p.m.;

Thursday, May 17, 2018: 11:00 a.m. until 11:00 p.m.;

Friday, March 18, 2018: 11:00 a.m. until 11:00 p.m.;

Saturday, May 19, 2018: 11:00 a.m. until 11:00 p.m.

Accordingly, Reyes worked a total of seventy-two hours during this week.  In exchange for his work during this week, Defendants paid Reyes $16.50 per hour for all hours worked, including the thirty-two hours that he worked in excess of forty.

33.     Additionally, on every workday that Reyes worked for Defendants beginning in April 2018 until the end of his employment, his spread of hours from the beginning to the end of each shift exceeded ten.  However, for those days, such as during the week described in the prior paragraph, Defendants failed to compensate Reyes with an additional hour's pay at the statutorily-required minimum wage rate.

34.     Defendants agreed to pay Plaintiffs on a weekly basis by check, with the regularly scheduled payday being Friday for the prior week of Monday through Sunday.  However, approximately two-to-three times per month, including, for example, their pay for the weeks of April 5 and 12, 2019 and April 12 and 19, 2019, Defendants failed to pay Reyes and Linares, respectively on the regularly-scheduled payday, and instead delayed paying Plaintiffs by a week

or longer.  Further, after Plaintiffs' employment with Defendants ended, Defendants failed to pay Plaintiffs their last paychecks for their work performed during their respective last pay periods.

35.     On each occasion when they paid Plaintiffs, Defendants did not provide Plaintiffs with a wage statement that accurately reflected, *inter alia*, the amount of hours that Plaintiffs worked per week, regular rate of pay, or overtime rate of pay for each hour that they each worked in a week in excess of forty.

36.     Additionally, Defendants did not provide Plaintiffs with any wage notice at the times of their respective hire or re-hire, let alone a notice that accurately contained, *inter alia*, Plaintiffs' rates of pay as designated by the employer.

37.     Defendants treated Plaintiffs and FLSA Plaintiffs in the same manner described herein.

38.     Defendants acted in the manner described herein so as to maximize their profits while minimizing their labor costs and overhead.

39.     Each hour that Plaintiffs and FLSA Plaintiffs worked was and is for Defendants' benefit.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime Under the FLSA*

40.     Plaintiffs and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

41.     29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

42.     As described above, Defendants are employers within the meaning of the FLSA, while Plaintiffs are employees within the meaning of the FLSA.

43.     As also described above, Plaintiffs and FLSA Plaintiffs worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the FLSA's overtime provisions.

44.     Defendants willfully violated the FLSA.

45.     Plaintiffs and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

46.     Plaintiffs and FLSA Plaintiffs are also entitled to liquidated damages and attorneys' fees for Defendants' violations of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime Under the NYLL and the NYCRR*

47.     Plaintiffs and any FLSA Plaintiff who opts-in to this action repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

48.     NYLL § 160 and 12 NYCRR § 146-1.4 require employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

49.     As described above, Defendants are employers within the meaning of the NYLL and the NYCRR, while Plaintiffs and any FLSA Plaintiff who opts-in to this action are employees within the meaning of the NYLL and the NYCRR.

50.     As also described above, Plaintiffs and any FLSA Plaintiff who opts-in to this action worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCRR's overtime provisions.

51.     Plaintiffs and any FLSA Plaintiff who opts-in to this action are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

52.     Plaintiffs and any FLSA Plaintiff who opts-in to this action are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and the NYCRR's overtime provisions.

**THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Violation of the NYLL's and the NYCRR's Spread of Hours Requirement*

53.     Plaintiffs and any FLSA Plaintiff who opts-in to this action repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

54.     NYLL § 652 and 12 NYCRR § 146-1.6 provide that an employee working in the hospitality industry shall receive one hour's pay at the minimum hourly wage rate for any day worked in which the spread of hours exceeds ten.

55.     As described above, Defendants are employers within the meaning of the NYLL and the NYCRR, while Plaintiffs and any FLSA Plaintiff who opts-in to this action are employees within the meaning of the NYLL and the NYCRR.

56.     As also described above, Plaintiffs and any FLSA Plaintiff who opts-in to this action worked days where their spread of hours exceeded ten, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCRR's spread-of-hours provisions.

57.     Plaintiffs and any FLSA Plaintiff who opts-in to this action are entitled to spread-of-hours pay, in the amount of one hour's pay at the minimum hourly wage rate, for any day worked in which their spread of hours exceeded ten.

58.     Plaintiffs and any FLSA Plaintiff who opts-in to this action are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and the NYCRR's spread-of-hours provisions.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Pay Timely Wages in Violation of the NYLL*

59.     Plaintiffs and any FLSA Plaintiff who opts-in to this action repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

60.     NYLL § 191(1)(d) requires that employers pay wages to their employees in accordance with the agreed terms of employment.

61.     As described above, Defendants are employers within the meaning of the NYLL, while Plaintiffs and any FLSA Plaintiff who opts-in to this action are employees within the meaning of the NYLL.

62.     As also described above, Defendants failed to compensate Plaintiffs and any FLSA Plaintiff who opts-in to this action in accordance with the agreed terms of their employment.

63.     Plaintiffs and any FLSA Plaintiff who opts-in to this action are entitled to any unpaid wages, liquidated damages associated with any missed or late payment, interest, and attorneys' fees for Defendants violations of the NYLL's requirement to pay all wages on a timely basis in accordance with agreed upon terms of employment.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Pay Wages After Employment is Terminated in Violation of the NYLL*

64.     Plaintiffs and any FLSA Plaintiff who opts-in to this action repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

65.     NYLL § 191(3) requires that employers pay to their employees the wages owed at the time the employee's employment ends, no later than the regular payday for the pay period during which the employment was terminated.

66.     As described above, Defendants are employers within the meaning of the NYLL, while Plaintiffs and any FLSA Plaintiff who opts-in to this action are employees within the meaning of the NYLL.

67.     As also described above, Defendants failed to pay Plaintiffs and any FLSA Plaintiff who opts-in to this action all wages earned by the regular payday for the pay period during which the employment was terminated.

68.     Plaintiffs and any FLSA Plaintiff who opts-in to this action are entitled to any unpaid wages, liquidated damages associated with any missed payment, interest, and attorneys' fees for Defendants violations of the NYLL's requirement to pay all wages due no later than the regular payday for the pay period during which the employment was terminated.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

69.     Plaintiffs and any FLSA Plaintiff who opts-in to this action repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

70.     NYLL § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

71.     As described above, Defendants are employers within the meaning of the NYLL, while Plaintiffs and any FLSA Plaintiff who opts-in to this action are employees within the meaning of the NYLL.

72.     As also described above, Defendants failed to furnish Plaintiffs and any FLSA Plaintiff who opts-in to this action with wage statements on each payday that accurately contained of all the criteria that the NYLL requires.

73.     Prior to February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff and any FLSA Plaintiff that opts-into this action, in the amount of $100.00 for each workweek after the violation occurred, up to a statutory cap of $2,500.00.

74.     On or after February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff and any FLSA Plaintiff that opts-into this action, in the amount of $250.00 for each workday after the violation occurred, up to a statutory cap of $5,000.00.

## SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Furnish Proper Wage Notice in Violation of the NYLL*

75.     Plaintiffs and any FLSA Plaintiff who opts-in to this action repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

76.     NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

77.     As described above, Defendants are employers within the meaning of the NYLL, while Plaintiffs and any FLSA Plaintiff who opts-in to this action are employees within the meaning of the NYLL.

78.     As also described above, Defendants failed to furnish Plaintiffs and any FLSA Plaintiff who opts-in to this action with any wage notice at the time of hire or re-hire, let alone a notice that accurately contained all of the criteria that the NYLL requires.

79.     Prior to February 27, 2015, pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiff and any FLSA Plaintiff that opts-into this action, in the amount of $50.00 for each workweek after the violation occurred, up to a statutory cap of $2,500.00.

80.     On or after February 27, 2015, pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiff and any FLSA Plaintiff that opts-into this action, in the amount of $50.00 for each workday after the violation initially occurred, up to a statutory cap of $5,000.00.

## DEMAND FOR A JURY TRIAL

81.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs and FLSA Plaintiffs demand a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and FLSA Plaintiffs demand judgment against Defendants as follows:

a.     A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b.     Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.     An order restraining Defendants from any retaliation against Plaintiffs and FLSA Plaintiffs for participating in any form in this litigation;

d.     Designation of this action as an FLSA collective action on behalf of Plaintiffs and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA

claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e.       All damages that Plaintiffs and FLSA Plaintiffs have sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiffs and FLSA Plaintiffs would have received but for Defendants' unlawful payment practices;

f.       Liquidated damages and any other statutory penalties as recoverable under the FLSA and the NYLL;

g.       Awarding Plaintiffs and FLSA Plaintiffs their reasonable attorneys' fees, as well as their costs and disbursements incurred in connection with this action, including expert witness fees and other costs, and an award of a service payment to Plaintiffs;

h.       Designation of Plaintiffs and their counsel as collective action representatives under the FLSA;

i.       Pre-judgment and post-judgment interest, as provided by law; and

      j.      Granting Plaintiffs and FLSA Plaintiffs such other and further relief as this Court

finds necessary and proper.

Dated:  New York, New York
          February 18, 2020

                            Respectfully submitted,
                            BORRELLI & ASSOCIATES, P.L.L.C.
                            *Attorneys for Plaintiffs*
                            655 Third Avenue, Suite 1821
                            New York, New York 10017
                            Tel. (212) 679-5000
                            Fax. (212) 679-5005

          By:

                            CAITLIN DUFFY (CD 8160)
                            ALEXANDER T. COLEMAN (AC 1717)
                            MICHAEL J. BORRELLI (MB 8533)